WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristen Lynn Gwyther, | No. CV-14-01110-PHX-ESW |
| Plaintiff, | |
| v. | **ORDER** |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Kristen Lynn Gwyther's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of her claim for disability benefits.  Plaintiff filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff alleges disability beginning on December 1, 2009.

This Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c).  Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing.  Both parties have consented to the exercise of U.S. Magistrate Judge

jurisdiction.  (Doc. 9).  After reviewing the Administrative Record ("A.R."), Plaintiff's Opening Brief (Doc. 22), Defendant's Response Brief (Doc. 23), and Plaintiff's Reply (Doc. 28), the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free of harmful legal error.  The decision is therefore affirmed.

## I. LEGAL STANDARDS

### A.  Disability Analysis:  Five-Step Evaluation

The Social Security Act (the "Act") provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  The Act also provides for Supplemental Security Income to certain individuals who are aged 65 or older, blind, or disabled and have limited income.  42 U.S.C. § 1382.  To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity.  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months.  *Id.*

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps.  20 C.F.R. §§ 404.1520(a), 416.920(a).  The claimant has the burden of proof regarding the first four steps:[1]

> **Step One**:  Is the claimant engaged in "substantial gainful activity"?  If so, the analysis ends and disability benefits are denied.  Otherwise, the ALJ proceeds to step two.

> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments?  A severe

---

[1] *Parra v. Astrue*, 481 F.3d 742,746 (9th Cir. 2007).

impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to step three.

**Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. §§ 404.1520(f), 416.920(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[2]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id.*

---

[2] *Parra*, 481 F.3d at 746.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.  Standard of Review Applicable to ALJ's Determination**

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).  Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions.  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).  If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination.  *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  This is because the ALJ, not the Court, is responsible for resolving conflicts and ambiguities in the evidence and determining credibility.  *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court also considers the harmless error doctrine when reviewing an ALJ's decision.  This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

Case 2:14-cv-01110-ESW   Document 29   Filed 07/24/15   Page 5 of 25

## II. PLAINTIFF'S APPEAL

### A. Procedural Background

Plaintiff was born in 1971 and has an associate's degree in applied science. (A.R. 19). Plaintiff worked as a control room operator in a power plant from 1993 until she was laid off in 2007. (A.R. 305, 20). Plaintiff has not worked since being laid off. (A.R. 19-20). Plaintiff alleges that on December 1, 2009,[3] at the age of 38, she became unable to work due to the following impairments: (i) chronic knee pain; (ii) "can't walk"; (iii) right shoulder injury; (iv) valley fever; and (v) depression.[4] (A.R. 140, 304).

On July 30, 2010, Plaintiff filed a Title II application for disability insurance benefits. (A.R. 284). On August 2, 2010, Plaintiff filed a Title XVI application for supplemental security income benefits.[5] (A.R. 286). Social Security denied both applications on January 14, 2011. (A.R. 183, 187). On July 13, 2011, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of Plaintiff's application. (A.R. 193, 196). Plaintiff then requested a hearing before an ALJ. (A.R. 203). The ALJ held a hearing on March 27, 2012, during which Plaintiff was represented by an attorney. (A.R. 14-57). The ALJ held another hearing on October 30, 2012. (A.R. 58-101). In his November 29, 2012 decision, the ALJ found that Plaintiff is not disabled. (A.R. 163-175). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner. (A.R. 1-5). On May 23, 2014, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 405(g) requesting judicial review and reversal of the ALJ's decision.

---

[3] Plaintiff initially alleged disability beginning on January 1, 2007. (A.R. 104, 117). Plaintiff amended the alleged disability onset date to December 1, 2009. (A.R. 345; *see also* Doc. 22 at 2).

[4] Plaintiff did not include depression as an impairment in her initial application, but raised it in her application for reconsideration. (A.R. 107, 140).

[5] The ALJ's decision erroneously states that both of Plaintiff's applications were filed on July 29, 2010. (A.R. 163).

- 5 -

**B.  The ALJ's Application of the Five-Step Disability Analysis**

The ALJ completed all five steps of the disability analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

### 1.  Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 1, 2009, the amended alleged disability onset date.  (A.R. 14).  Neither party disputes this determination.

### 2.  Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following impairments that are severe when they are considered in combination: (i) knee pain; (ii) back pain; (iii) valley fever; (iv) and right shoulder impingement.  (A.R. 165).  Plaintiff argues that the ALJ erred by not including Plaintiff's alleged depression in the list of severe impairments.

### 3.  Step Three: Presence of Listed Impairment(s)

The ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations.  (A.R. 166-67).  Neither party disputes the ALJ's determination at this step.

### 4.  Step Four:  Capacity to Perform Past Relevant Work

The ALJ found that Plaintiff has retained the residual functional capacity ("RFC") to perform light exertional work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff is limited to performing unskilled work.  (A.R. 167-68).   After considering the testimony of a vocational expert ("VE") and Plaintiff's RFC, the ALJ determined that Plaintiff is able to perform her past relevant work.  (A.R. 174).

Plaintiff challenges the ALJ's step four determination on two grounds.  Plaintiff argues that in determining Plaintiff's RFC, the ALJ improperly rejected (i) the opinions of treating and consulting physicians and (ii) Plaintiff's testimony regarding her symptoms.  (Doc. 22 at 18-20; 22-24).  Plaintiff also argues that the ALJ's finding that

Plaintiff can perform her past relevant work is contrary to the VE's testimony at the October 2012 hearing and the *Dictionary of Occupational Titles*. (*Id*. at 16-18). For the reasons explained in Section II(D)(1) below, the Court does not find that the ALJ improperly weighed the evidence in determining Plaintiff's RFC. The Court does agree with Plaintiff, however, that the ALJ erred in determining that Plaintiff can perform her past relevant work. But the Court finds that the error is harmless in light of the ALJ's alternative step five finding.

### 5. Step Five: Capacity to Perform Other Work

Even though the ALJ found at step four that Plaintiff can perform her past relevant work, the ALJ proceeded to step five and made an alternative finding that Plaintiff is able to perform other jobs existing in significant numbers in the national economy. (A.R. 174). In making this finding, the ALJ relied on the Medical-Vocational Guidelines (the "Grids"). Plaintiff did not present a step five challenge in her Opening Brief and has therefore waived the challenge to the ALJ's reliance on the Grids at step five. *Bray v. Commissioner of Social Security Admin*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (deeming argument not made in disability claimant's Opening Brief waived). Even if Plaintiff did not waive the challenge, the Court does not find harmful error for the reasons explained in Section II(E) below.

### C. Plaintiff's Challenge at Step Two: The ALJ's Exclusion of Plaintiff's Alleged Depression in the List of Severe Impairments

At step two of the disability analysis, the claimant must show that his or her medically determinable impairments are severe. "Severe" means that the impairments significantly limit the claimant's ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (citation and internal quotation marks omitted); SSR 96-3p, 1996 WL 374181.

For allegations regarding mental impairments, an ALJ must use the special review technique set forth in 20 C.F.R. § 404.1520a.  After determining whether an applicant has a medically determinable mental impairment, the ALJ must rate the degree of functional limitation in four areas: (i) activities of daily living, (ii) social functioning, (iii) concentration, persistence or pace, and (iv) episodes of decompensation.  *Id*. at § 404.1520a(c)(3).  Next, the ALJ must determine the severity of the mental impairment. *Id*. at § 404.1520a(d).

If the degree of limitation in the first three functional areas is "none" or "mild" and "none" in the fourth area, it is generally concluded that the impairment is not severe unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities.  *Id*. at § 404.1520a(d)(1).  If the impairment is severe, the ALJ proceeds to step three of the five-step disability analysis to determine if the impairment meets or equals a specific listed mental disorder.  *Id*. at § 404.1520a(d)(2); *Keyser v. Comm'r Soc. Sec. Admin*., 648 F.3d 721, 725 (9th Cir. 2011).

Here, the ALJ reviewed the evidence to determine if Plaintiff's alleged depression is severe.  (A.R. 166-67).  The ALJ noted that (i) Plaintiff is still able to drive to her physical therapy appointments and care for her personal needs with some help; (ii) Plaintiff has been able to get along well with others; (iii) the record shows that Plaintiff has "moderate limitations in sustaining focus, attention, and concentration <u>sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings</u>";[6] and (iv) medical consultant Dr. Randall Garland found that Plaintiff has only mild limitations in activities of daily living, social functioning, and concentration, persistence or pace.  (*Id*.).

As to the fourth functional area (episodes of decompensation), the ALJ found that there was no evidence of episodes of decompensation.  (A.R. 167).  Due to the finding

---

[6] The ALJ's use of the phrase "moderate limitations" in the sentence does not require a finding that Plaintiff's alleged depression is severe.  *See Koehler v. Astrue*, 283 F.App'x. 443, 445 (9th Cir. 2008).

that Plaintiff's alleged depressive disorder does not cause more than minimal limitation in Plaintiff's ability to perform basic work activities, the ALJ determined that it is not severe.[7]  (A.R. 167).

The record contains substantial evidence supporting the ALJ's finding that Plaintiff's alleged depression is not a severe impairment:

1.  Plaintiff repeatedly denied depression at medical appointments.  (*e.g.,* A.R. 392, 395, 496, 1192, and 1196).

2.  Physicians repeatedly reported that Plaintiff was well-appearing, alert and oriented, and had normal mood and affect.  (*e.g.,* A.R. 418, 656, 717, 950, 1087, 1152, 1179).

3.  Consulting psychologist Dr. James Huddleston opined that Plaintiff had no limitations on Plaintiff's ability to (i) understand, remember, and carry out instructions; (ii) interact appropriately with supervisors, co-workers, and the public; and (iii) respond to changes in the routine work setting.  (A.R. 1044-45).  While Dr. Huddleston opined that Plaintiff "suffers moderate impairment in [the] ability to sustain concentration [and] normal work pace," "moderate" was defined as meaning that "the individual is still able to function satisfactorily."[8]  (*Id.*) (emphasis added).  Moreover, Social Security's "regulatory scheme . . . does not mandate that the diagnosis of a 'moderate' degree of limitation in one's ability to respond to changes in the workplace setting must be found to be a 'sever[e]' mental impairment."  *Koehler*, 283 F.App'x. at 445.

It is well-settled that the ALJ, not the Court, is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities in the evidence.  *Magallanes*, 881 F.2d at 750.  Where "the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of

---

[7] Although the ALJ did not explicitly make this statement, it is implied.  A reviewing court may draw specific and legitimate inferences from an ALJ's decision.  *See Magallanes*, 881 F.2d at 755.

[8] Section II(2)(iii) below addresses Plaintiff's argument that Dr. Huddleston's opinion cannot constitute substantial evidence supporting the ALJ's decision.

the [ALJ]." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews*, 53 F.3d at 1039).   For the reasons discussed above, the Court does not find that the ALJ committed harmful error in determining that Plaintiff's alleged depression is not severe. Even if the ALJ did err in finding that Plaintiff's alleged depression is not severe, the error does not necessarily warrant remand.   Where a disability claimant argues that an ALJ has erred, the claimant must also show that the asserted error resulted in actual harm. *See Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his "substantial rights," which is to say, not merely his procedural rights.") (citing *Shinseki v. Sanders,* 556 U.S. 396, 407–09 (2009)).   The Court looks at the "record as a whole to determine [if] the error alters the outcome of the case." *Molina,* 674 F.3d at 1115.

An ALJ's error at step two by failing to find an alleged impairment "severe" is harmless if the ALJ considered the impairment when determining the claimant's RFC in step four.   For example, in *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007), an ALJ found at step two that the claimant was severely impaired "as a result of status post laminectomy and diabetes mellitus."   On appeal, the claimant argued that the ALJ erred by failing to also find that the claimant's bursitis was a severe impairment.   The Ninth Circuit Court of Appeals held that the ALJ's "decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4.   As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless." *Id.*

In *Burch v. Barnhart,* 400 F.3d 676, 682 (9th Cir. 2005), the claimant argued on appeal that the ALJ failed to include obesity as a severe impairment at step two.   The Ninth Circuit found that the ALJ did not commit harmful error as the ALJ adequately considered the claimant's obesity in the RFC determination.   The Court also noted that the claimant did not provide evidence of any functional limitations caused by the claimant's obesity that the ALJ failed to consider. *Id.* at 684.

Here, the ALJ acknowledged Plaintiff's testimony regarding her depression.  (A.R. 168).  The ALJ did not find Plaintiff's testimony fully credible.[9]  (A.R. 169).  The ALJ then properly weighed the remaining evidence regarding Plaintiff's depression and determined that Plaintiff is capable of light, unskilled work.  Similar to the claimant's appeal in *Burch*, Plaintiff has not set forth, and there is no evidence in the record, of any functional limitations caused by Plaintiff's alleged depression that the ALJ failed to consider.  Plaintiff has thus failed to show that finding her alleged depression severe at step two would have any effect on the ultimate disability determination.  Accordingly, even if the ALJ erred by failing to find Plaintiff's alleged depression severe, the error is harmless.

### D.  Plaintiff's Challenge at Step Four

#### 1.  The ALJ Did Not Improperly Weigh the Opinions of Treating and Examining Physicians in Determining Plaintiff's RFC

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (ii) examining physicians, who examine but do not treat the claimant; and (iii) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight should be given to a treating physician's opinion than to the opinion of a non-treating physician.  *Id.*  An ALJ cannot reject a treating physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence, such as finding that a treating physician's opinion is inconsistent with and not supported by the record as a whole.  20 C.F.R. § 404.1527(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

---

[9] As discussed in Section II(D)(3) below, the ALJ did not improperly discredit Plaintiff's testimony.

2002); *Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

Here, Plaintiff argues that the ALJ improperly rejected Plaintiff's treating psychologist, Dr. James Davidson-Methot, in favor of the opinion of consulting physician Dr. James Huddleston.  (Doc. 22 at 19-20).  Plaintiff also argues that the ALJ improperly failed to provide adequate reasons for rejecting the opinion of examining physician Dr. J. Carvel Jackson.  (Doc. 22 at 19-20).

### i. Dr. James Davidson-Methot

In March 2012, Plaintiff's treating psychologist Dr. James Davidson-Methot opined that Plaintiff's "mental impairments are primarily . . . rooted in her physical disability, causing chronic pain and fatigue which interferes with concentration, tolerance of frustration, and the ability to sustain any activity over a long period of time, such as more than 3-4 hours."  (A.R. 1020).  Dr. Davidson-Methot also indicated that Plaintiff had moderately severe and severe limitations in a number of areas.   (A.R. 1019). Because Dr. Davidson-Methot's opinion is controverted by another physician (Dr. James Huddleston), the ALJ must provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Davidson-Methot's opinion.  The ALJ gave several reasons for giving Dr. Davidson-Methot's opinion little weight:

1.    Records from Plaintiff's physical examinations consistently indicate that Plaintiff was fully-oriented and had a normal mood.  (A.R. 173).  Plaintiff was also "continually noted to have no impairment in her mental status or cognitive function" during her physical therapy sessions.  (*Id*.).  Plaintiff's global assessment ratings never exceeded a score indicating anything more than moderate symptoms.  (A.R. 172-73). Finally, the ALJ explained that Dr. Davidson-Methot's opinion was contrary to Dr. Huddleston's opinion provided after Dr. Huddleston examined Plaintiff.    After considering the evidence, including the above, the ALJ found that Dr. Davidson-Methot's opinion is contrary to the record.  This is a valid reason for giving the opinion little weight and is supported by substantial evidence.  *See Tommasetti*, 533 F.3d at 1041.

2.   The ALJ also correctly observed that there are "very little mental health treatment notes of record."  (A.R. 173).   The record contains evidence of an intake appointment on March 7, 2011 and seven subsequent therapy sessions held in March-May 2011.   (A.R. 658-74).   Plaintiff's intake report states that Plaintiff's "chief complaints are guilt about what [Plaintiff's] children have gone through because of [Plaintiff's] 'poor choices' in men . . . ."  (A.R. 660).   Notes from the therapy sessions indicate that therapy focused on Plaintiff's relationships with men.   The following is stated at the end of each note: "Will continue to explore pt's depression and it's [sic] roots in her marriage relationship."  (A.R. 663-68).   The notes do not discuss how Plaintiff's depression is primarily rooted in her physical disability as opined by Dr. Davidson-Methot.   The ALJ also observed that Plaintiff did not use psychotropic medications for any mental impairment, which indicates that the impairment "may not be as serious as alleged." [10]   (A.R. 173).   The ALJ's implied finding that Dr. Davidson-Methot's opinion is unsupported by treatment records is a specific and legitimate reason for rejecting the opinion.  *See Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may properly reject a treating doctor's opinion that a claimant cannot work that is "unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions"); s*ee also Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002) (the Commissioner "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings").

---

[10] While Plaintiff asserts that she did not take psychotropic medications due to concerns about how they may react with her other medications (Doc. 22 at 24), the record does not contain evidence that psychotropic medications are even needed.  While Dr. Davidson-Methot recounted Plaintiff's concern about taking psychotropic medications, Dr. Davidson-Methot did not opine that Plaintiff would benefit from them.  (A.R. 661-62; 1017).  In addition, the record does not contain evidence that Plaintiff's concern is valid.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

For the above reasons, the Court finds that the ALJ properly weighed Dr. Davidson-Methot's opinion.

### ii.  Dr. J. Carvel Jackson

Plaintiff also argues that the ALJ failed to provide sufficient reasons for rejecting the opinion of examining physician Dr. J. Carvel Jackson in favor of the opinion of consultative examiner Dr. Neil McPhee.  In explaining why little weight was given to Dr. Jackson's opinion, the ALJ found that "there are no objective findings or an explanation as to why [Plaintiff] is so limited."  (A.R. 173).  Dr. Jackson's physical examination report recites abnormalities in Plaintiff's examination, such as an antalgic gait, difficulty in toe walking and heel walking on the left, difficulty with tandem gait heel-toe walk, and an inability to do a squat.  (A.R. 1140-41).  Dr. Jackson then opines that Plaintiff is "totally and permanently disabled," but does not explain how Plaintiff's conditions led him to that conclusion.  (A.R. 1141).  Likewise, Dr. Jackson's Medical Source Statement, which is in "checkbox" format, does not contain reasons for the stated functional limitations.  (A.R. 1143-46).

The ALJ found that the Dr. McPhee's opinion "is more persuasive due to the explanation of his limitations and because it was based on an examination of [Plaintiff]." (A.R. 173).  In contrast to Dr. Jackson's report, Dr. McPhee explained how Plaintiff's conditions support his opinions of Plaintiff's limitations.  For instance, Dr. McPhee opined that "it would be best for [Plaintiff] to not climb ladders, ropes, or scaffolds" due to Plaintiff's "chronic complaints and sense of instability."  (A.R. 1030).  Other aspects of Dr. McPhee's report support the ALJ's determination that it is more persuasive than Dr. Jackson's report.  First, while Dr. Jackson merely listed the medical records reviewed, Dr. McPhee wrote an approximately six page summary of them.  (A.R. 1022-28; 1142).  Second, Dr. McPhee gave a more detailed summary of his examination of Plaintiff.  To illustrate, Dr. McPhee noted that Plaintiff wore knee braces to the appointment and stated that he asked her to remove them for the examination.  (A.R.

1029).  It is not clear from Dr. Jackson's notes whether Plaintiff wore her knee braces to the examination, and if so, whether or not she removed them.

It is the ALJ's responsibility to determine credibility and resolve conflicts in medical testimony.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  In this case, the ALJ was faced with the conflicting opinions of two examining physicians.  The ALJ ultimately decided that Dr. McPhee's opinion was more persuasive.  This was a reasonable decision that the Court will not overturn.

### iii.  Dr. James Huddleston

Under Ninth Circuit case law, a non-treating physician's opinion that rests on objective clinical tests may constitute substantial evidence supporting an ALJ's decision. *Magallanes*, 881 F.2d at 751.  However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence' to support the rejection of a treating physician's opinion."  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).  Independent clinical findings can be either (i) diagnoses that differ from those offered by another physician and that are supported by substantial evidence or (ii) findings based on objective medical tests that the treating physician has not considered. *Id*. at 633 (citing *Allen*, 749 F.2d at 579 and *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

Here, the ALJ gave Dr. Huddleston's opinion significant weight.[11]  (A.R. 173).  Plaintiff argues that Dr. Huddleston's opinion cannot constitute substantial evidence supporting the ALJ's decision.  Plaintiff asserts that Dr. Huddleston's opinion is not based upon different test data and does not offer a diagnosis that differs from Dr. Davidson-Methot's diagnosis.  (Doc. 22 at 19).  Dr. Huddleston, however, conducted an independent mental status examination of Plaintiff.  (A.R. 1035-37).  Dr. Huddleston also

---

[11] Plaintiff's Reply (Doc. 28 at 5) erroneously states that the ALJ's decision does not indicate the weight assigned to Dr. Huddleston's opinion.  The ALJ's decision explicitly states that "[t]he undersigned accords significant weight to the opinions of Dr. McPhee **and Dr. Huddleston** . . . ."  (A.R. 173).

- 15 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

administered a number of other tests: (i) Wechsler Adult Intelligence Scale- Fourth Edition (WAIS-IV); (ii) Wechsler Memory Scale-IV; (iii) Parts A and B of the Trail Making Test; and (iv) the Bender Gestalt test.   (A.R. 1039).   Based on clinical observations, Dr. Huddleston found that Plaintiff's test-taking behaviors rendered the test results invalid and unreliable.   Dr. Huddleston also found that Plaintiff "may have engaged in some degree of symptom magnification during examination."  (A.R. 1040). Upon consideration of his findings, Dr. Huddleston opined that Plaintiff has a "moderate" impairment in her ability to sustain concentration and normal work pace, but has no other impairments.  (A.R. 1044-45).

Contrary to Plaintiff's assertion, Dr. Huddleston diagnosed Plaintiff differently than Dr. Davidson-Methot.  Both doctors used the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM") to diagnose Plaintiff.  Dr. Davidson-Methot used diagnostic code 296.33 and stated that Plaintiff had "major depressive disorder, recurrent, **severe** [without] psychotic features."  (A.R. 661) (emphasis added).  In contrast, Dr. Huddleston used diagnostic code 296.20 and stated that Plaintiff had "major depressive disorder, **moderate**, chronic, without psychotic features."   (A.R. 1040) (emphasis added).   Dr. Huddleston's diagnosis is supported by the evidence discussed in Section II(C) above and by Dr. Jackson, who opined that Plaintiff had "**minimal**, probable depression, anxiety, and posttraumatic stress disorder."  (A.R. 1141).   Because Dr. Huddleston's opinion is based on independent clinical findings, the Court finds that under *Orn*, Dr. Huddleston's opinion constitutes substantial evidence supporting the ALJ's decision

### 2.  The ALJ Did Not Improperly Weigh Plaintiff's Credibility

When evaluating the credibility of a plaintiff's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The plaintiff does not have to show that the

1

2       impairment could reasonably be expected to cause the severity of the symptoms.  Rather,

3       a plaintiff must only show that it could have caused some degree of the symptoms.

        *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

4               If a plaintiff meets the first step, and there is no evidence of malingering, the ALJ

5       can only reject a plaintiff's testimony about the severity of his or her symptoms by

6       offering specific, clear, and convincing reasons.  *Lingenfelter*, 504 F.3d at 1036.  The

7       ALJ cannot rely on general findings.  The ALJ must identify specifically what testimony

8       is not credible and what evidence undermines the plaintiff's complaints.  *Berry v. Astrue*,

9       622 F.3d 1228, 1234 (9th Cir. 2010).  In weighing a plaintiff's credibility, the ALJ can

10      consider many factors including: a plaintiff's reputation for truthfulness, prior

11      inconsistent statements concerning the symptoms, unexplained or inadequately explained

12      failure to seek treatment, and the plaintiff's daily activities.  *Smolen*, 80 F.3d at 1284; *see*

13      *also* 20 C.F.R. §  404.1529(c)(4) (Social Security must consider whether there are

14      conflicts between a claimant's statements and the rest of the evidence).  In addition,

15      although the lack of medical evidence cannot form the sole basis for discounting pain

16      testimony, it is a factor that the ALJ can consider in his or her credibility analysis.  *Burch*

17      *v. Barnhart*, 400 F.3d 676 (9th Cir. 2005); *see also* 20 C.F.R. 404.1529(c); *Rollins v.*

18      *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

19              Here, Plaintiff argues that the ALJ erred in discrediting Plaintiff's testimony

20      regarding her subjective symptoms.  In Section 5 of the ALJ's decision, the ALJ

21      explained the two-step process to be used in determining the credibility of a claimant's

22      symptoms.  (A.R. 168).  After summarizing Plaintiff's symptom testimony, the ALJ

23      stated that Plaintiff's medically determinable impairments could reasonably be expected

24      to cause the alleged symptoms, but Plaintiff's statements concerning the intensity,

25      persistence, and limiting effects of the symptoms are not fully credible to the extent they

26      are inconsistent with Plaintiff's assessed RFC.  (A.R. 168-69).  The ALJ then discussed

27      specific evidence in the record that discredits Plaintiff's testimony regarding Plaintiff's

28      alleged symptoms.  For instance:

1.  Examination records indicate that Plaintiff had a normal gait and was able to stand without difficulty.  (A.R. 169).  Another examination revealed that Plaintiff had good strength increase in her quadriceps and full range of motion in both knees.  (A.R. 170).  Based on the record, the ALJ concluded that the evidence "cannot be fully reconciled with the level of pain and limiting effects of the impairments that [Plaintiff] has alleged."  (A.R. 169).  This is a valid reason for discrediting symptom testimony and is supported by substantial evidence.  *See Lingenfelter,* 504 F.3d at 1040 (in determining credibility, an ALJ may consider "whether the alleged symptoms are consistent with the medical evidence"); *see also Carmickle,* 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

2.  The ALJ commented that records show that Plaintiff complained of issues related to her neck, knee, and ankle before the alleged onset date.  (A.R. 169).  *See Tommasetti,* 533 F.3d at 1039 (an ALJ may rely on ordinary techniques of credibility evaluation).

3.  In addition, the ALJ noted that the fact that Plaintiff does not take psychotropic medications is inconsistent with a finding that Plaintiff suffers from a debilitating mental impairment.  (A.R. 173).  *See Parra,* 481 F.3d at 751 (noting "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (in weighing a claimant's credibility, an ALJ may consider factors in weighing a claimant's credibility, including the unexplained or inadequately explained failure to seek treatment). As explained previously, the ALJ validly considered Plaintiff's nonuse of psychotropic medications in weighing the evidence.   Yet even if the ALJ did err in considering whether Plaintiff is taking psychotropic medications, it is harmless error as the ALJ provided other clear and convincing reasons for discrediting Plaintiff's testimony.  *See*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.2008) (finding harmless error where "two of the ALJ's [four] reasons supporting his adverse credibility finding [were] invalid"); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9th Cir.2004) (finding any error in one of the ALJ's reasons for discrediting claimant was harmless as the ALJ provided other valid reasons).

The ALJ's credibility finding in this case is unlike the brief and conclusory credibility findings that the Ninth Circuit Court of Appeals has deemed insufficient in other cases. For example, in *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014), an ALJ stated in a single sentence that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." The Court of Appeals held that stopping after this introductory remark "falls short of meeting the ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse determination is based." *Id.* at 1103 (internal quotation marks omitted); *see also* 42 U.S.C. § 405(b)(1). The Court further stated that an ALJ's "vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)).

In *Robbins v. Astrue*, 466 F.3d 880, 883-84 (9th Cir. 2006), the Court of Appeals found the ALJ's "fleeting credibility finding" insufficient. The ALJ simply stated that (i) the claimant's testimony was "not consistent with or supported by the overall medical evidence of record" and (ii) "[claimant's] testimony regarding his alcohol dependence and abuse problem remains equivocal." *Id.* In discussing why the ALJ's finding was insufficient, the Court explained that the ALJ did not provide a "narrative discussion" containing "specific reasons for the finding . . .supported by the evidence in the record." *Id.* at 884-85.

Similarly, in *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), an ALJ simply concluded that the claimant's complaints were "not credible" and "exaggerated." The Court held that the finding was insufficient as the ALJ did not provide any specific reasons for disbelieving the claimant other than a lack of objective evidence. *Id.* at 834.

The ALJ's credibility finding in this case is more like the credibility finding in *Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1175 (9th Cir. 2008). In *Stubbs-Danielson*, the Ninth Circuit Court of Appeals found that an ALJ sufficiently explained the reasons for discrediting a claimant's symptom testimony where the ALJ stated that:

> The claimant's allegations as to the intensity, persistence and limiting effects of her symptoms are disproportionate and not supported by the objective medical findings nor any other corroborating evidence. The record reflects that the claimant has normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances.
>
> * * *
>
> These activities tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis.

Here, unlike in *Treichler*, *Robbins*, and *Lester*, the ALJ goes beyond making a "fleeting" and conclusory remark that Plaintiff's testimony is not credible. The ALJ thoroughly discussed the evidence and explained the inconsistencies in the record that he found discredited Plaintiff's testimony. It is possible that a different ALJ would find Plaintiff's symptom testimony credible. But it is not the Court's role to second guess an ALJ's decision to disbelieve a Plaintiff's allegations. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ."). Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Morgan*, 169 F.3d at 599. The Court finds that the reasons provided by the ALJ for discrediting Plaintiff's testimony are specific, clear, convincing, and are

1   supported by substantial evidence in the record.  The Court therefore finds that the ALJ

2   did not err in discrediting Plaintiff's subjective testimony.

3           **3.  The ALJ Committed Harmless Error in Finding that Plaintiff**
4               **Could Perform Her Past Relevant Work**

5           At the hearing held in March 2012, VE Scott Nielson ("VE Nielson") testified that

6   Plaintiff's past relevant work consists of the following two positions contained in the

7   *Dictionary of Occupational Titles*: (i) "central control room operator," with alternate title

8   "turbine operator" (DOT § 952.362-042) and (ii) "powerhouse mechanic supervisor"

9   (DOT § 631.131-010).  (A.R. 49).  As VE Nielson correctly testified, both of these

10  positions are skilled and have a light exertional level.  (*Id.*).  VE Nielson did not appear at

11  the second hearing in October 2012.  Instead, VE Shirley Ripp ("VE Ripp") appeared.

12  (A.R. 87).  In defining Plaintiff's past relevant work, VE Ripp did not cite the same

13  positions from the *Dictionary of Occupational Titles* as VE Nielson.  Rather, VE Ripp

14  cited the positions of "control room operator" (DOT § 950.382-010) and "power plant

15  operator" (DOT § 950.382-026).  (A.R. 89).  VE Ripp correctly testified that both

16  positions are skilled and have a medium exertional level.  (A.R. 89).

17          The ALJ's decision does not discuss the discrepancy in the testimony of VE

18  Neilson and VE Ripp.  Although not entirely clear, it appears that the ALJ adopted VE

19  Ripp's testimony as his decision references the same occupational titles that VE Ripp

20  found constitutes Plaintiff's past relevant work.  The ALJ found that Plaintiff is "capable

21  of performing past relevant work as a control room operator and power plant operator."

22  (A.R. 174).  The ALJ stated that "[t]his work does not require the performance of work-

23  related activities precluded by [Plaintiff's RFC]" and further explained that the:

24          [VE] testified that the individual would be able to complete
25          past work as the demands of said past work do not exceed the
            [RFC].  Based on the testimony of the [VE], the undersigned
26          concludes that, comparing [Plaintiff's] current [RFC] with the
            demands of [Plaintiff's] past relevant work, the demands of
27          said work do not exceed the current [RFC].  Accordingly, in
            comparing [Plaintiff's RFC] with the physical and mental
28

- 21 -

1

2

> demands of this work, the undersigned finds that [Plaintiff] is
> able to perform it as actually and generally performed.

3

(*Id.*).

4        The Court finds that the ALJ erroneously determined that Plaintiff can perform her

5  past relevant work as a control room operator and power plant operator.   First, both

6  positions are skilled, while Plaintiff's RFC limits Plaintiff to unskilled work.   Second,

7  both positions are medium exertional work, while Plaintiff is limited to light exertional

8  work.    Yet  the  ALJ's  error  does  not  necessarily  mean  remand  is  warranted.    In

9  *Tommasetti v. Astrue*, 533 F.3d 1035 (9th Cir. 2008), the Ninth Circuit found that an ALJ

10  erred at step four in finding that a claimant could perform the claimant's past work, but

11  held that the error was harmless as the ALJ made an alternative finding at step five that

12  the claimant could perform other work in the national and regional economies.   Similarly

13  here, the ALJ made the alternative finding at step five that Plaintiff can perform other

14  work in the national economy.   Plaintiff did not challenge the ALJ's step five finding in

15  her Opening Brief (Doc. 22) and has therefore waived the issue.[12]   *Bray*, 554 F.3d at

16  1226 n.7 (deeming argument not made in disability claimant's Opening Brief waived).

17  Nonetheless, the challenge would fail as explained in the next section.

18        **E.  The ALJ's Alternative Step Five Finding**

19        At the fifth step of the disability analysis, the burden rests on the Commissioner to

20  show that the claimant can engage in work that exists in significant numbers in the

21  national economy.   20 C.F.R. § 404.1520(a)(4)(v); *Lockwood v. Comm'r of Soc. Sec.*

22  *Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).   In determining whether the claimant

23  retains the ability to perform other work, an ALJ may refer to the Grids in certain cases.

24  20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00; *Desrosiers v. Sec. of Health and*

25

26        [12] Plaintiff's Opening Brief asserts that "If the ALJ had applied the VE's testimony
27  accurately in his determination at step 4, [Plaintiff] would have been unable to perform
   any of her [past relevant work].   The burden would then shift to the ALJ to show
   [Plaintiff] could perform other work given her functional limitations."   (Doc. 22 at 17-
28  18).  Plaintiff's Opening Brief, however, does not discuss the ALJ's alternative step five
   finding.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Human Services*, 846 F.2d 573, 576-77 (9th Cir. 1988). The Grids are divided into three job categories: (i) sedentary work, (ii) light work, and (iii) medium work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00. The Grids calculate whether or not the claimant is disabled based on the claimant's exertional physical ability, age, education, and work experience. As such, the Grids are intended to streamline the administrative process and encourage uniform treatment of claims. *See Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983) (discussing the creation and purpose of the Grids).

However, an ALJ should rely on the Grids "only when the [G]rids accurately and completely describe the claimant's abilities and limitations." *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985); *see also Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir.1999) (noting that the Grids "should be applied only where a claimant's functional limitations fall into a standardized pattern 'accurately and completely' described by the [G]rids" and that a VE should be consulted where limitations "significantly limit the range of work" a person can perform) (citation omitted). Use of the Grids is inappropriate where a claimant has non-exertional limitations that restrict the claimant's ability to perform the full range of work within a job category. *Burkhart*, 856 F.2d at 1340-41. Examples of non-exertional limitations include those "mental, sensory, postural, manipulative, or environmental (e.g., inability to tolerate dust or fumes) limitations." *Desrosiers*, 846 F.2d at 579.

Yet the presence of a non-exertional limitation does not automatically preclude application of the Grids. *See id*. at 577. Rather, a non-exertional limitation must be "'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitation." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). Moreover, a finding that a non-exertional impairment is severe at step two does not necessarily mean it is "sufficiently severe" to significantly limit the range of work permitted by a claimant's exertional limitation. As the Ninth Circuit has explained, the determinations at steps two and five require different levels of severity of limitations,

"otherwise the two steps would collapse and a [VE] would be required in every case in which a step-two determination of severity is made." *Id.*

In *Hoopai*, an ALJ found at step two that the claimant's back pain and depression were severe when considered in combination. One of the claimant's doctors found that the claimant's depression caused (i) mild limitations regarding the claimant's activities of daily living and social functioning and (ii) moderate limitations regarding the claimant's ability to maintain concentration, persistence and pace. *Id.* at 1076-77. On appeal, the claimant argued that his depression was a significant non-exertional limitation that required the ALJ to seek the testimony of a VE instead of using the Grids. *Id.* at 1076. The Ninth Circuit stated that "we have not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation." *Id.* at 1077. The Ninth Circuit held that substantial evidence supports the ALJ's conclusion that the depression was not a sufficiently severe non-exertional limitation that prohibited the ALJ's reliance on the grids without the assistance of a VE. *Id.*

Here, Dr. Huddleston opined that Plaintiff's depression caused no limitations in activities of daily living, social interaction, and adjustment to changes in the workplace. (A.R. 1044-45). Dr. Huddleston opined that Plaintiff's depression caused a "moderate" impairment in the area of concentration, persistence, and pace. (A.R. 1045). Again, "moderate " was defined as meaning that Plaintiff can still function satisfactorily. (A.R. 1044). The ALJ did not err in giving Dr. Huddleston's opinion significant weight and in rejecting the contrary opinion of Plaintiff's treating psychologist. Thus, under *Hoopai*, the ALJ did not err by exclusively relying on the Grids at step five as substantial evidence supports the ALJ's finding that Plaintiff's non-exertional limitations are not sufficiently severe to limit Plaintiff's ability to perform light, unskilled work.[13] The Court therefore

---

[13] As the ALJ's step five determination solely rested on the Grids, Plaintiff's assertion in her Reply (Doc. 28 at 2) that the ALJ improperly rejected the VE's testimony at step five is meritless. First, Plaintiff has waived the challenge as she failed to raise it in her Opening Brief. Second, "[u]nder no circumstances may a vocational expert's

finds that the Commissioner satisfied the burden at step five in showing that Plaintiff can perform other work in the national economy that exists in significant numbers.

### III.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is free from reversible error.  Accordingly, the decision of the Commissioner of Social Security is affirmed.

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner of Social Security.  The Clerk of Court shall enter judgment accordingly.

Dated this 24th day of July, 2015.

_____
Eileen S. Willett
United States Magistrate Judge

---

testimony supplant or override a disability conclusion dictated by the Guidelines." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1116 (9th Cir. 2006).